THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CARL WILLIAM MONTGOMERY, Defendant-Appellant.
Fourth District   No. 4—85—0407

Opinion filed March 3, 1986.

G. Ronald Kesinger, of Jacksonville, for appellant.

Paul Lee Stone, State's Attorney, of Sullivan (Kenneth R. Boyle, Robert J. Biderman and Perry Lee Miller, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE MORTHLAND delivered the opinion of the court:

Defendant Carl William Montgomery appeals the denial, after a full hearing, of his post-conviction petition for a new trial pursuant to the Post-Conviction Hearing Act (Ill. Rev. Stat. 1983, ch. 28, par. 122—1 *et seq.*). We affirm.

Defendant was arrested and charged with the commission of two separate burglaries occurring the same day, one in Moultrie County and one in Macon County. Following a jury trial in Moultrie County, defendant was found guilty of residential burglary in violation of section 19—3 of the Criminal Code of 1961 (Ill. Rev. Stat. 1983, ch. 38, par. 19—3), and was sentenced to a seven-year term of imprisonment. He appealed that conviction to this court, and we affirmed. (*People v. Montgomery* (1984), 125 Ill. App. 3d 1175 (Rule 23 order).) Following the Moultrie County conviction, but before our disposition of that matter on direct appeal, defendant was tried in Macon County for the second offense. Testimony of a disinterested witness who placed defendant in Springfield the day of the burglary was introduced there; no such testimony had been presented during the Moultrie County trial. The Macon County jury returned a verdict of not guilty.

Defendant then filed a petition for post-conviction relief after exhaustion of his direct appeal on the Moultrie County matter. In his petition, defendant alleged he had been incompetently represented at trial because counsel failed to investigate, identify and procure the testimony of a witness who would rebut the testimony of the State's

principal witness, the defendant's alleged coconspirator. This ineffective assistance of trial counsel, defendant averred, resulted in substantial prejudice to him and denial of a fair trial, without which the outcome would have been different. In support thereof, defendant claimed that the Macon and Moultrie County trials were substantially similar, except for the addition of the witness' testimony in Macon County and, of course, the ultimate results of the respective proceedings.

A hearing on the defendant's petition was held before the circuit court of Moultrie County on April 8, 1985. G. Ronald Kesinger, defendant's counsel for both trials as well as for the original appeal, testified as to what he believed to be his own incompetent assistance. The Macon County trial testimony of the witness in question was introduced by transcript. Upon hearing all testimony, the trial court denied the defendant's petition. Defendant subsequently filed a motion for reconsideration, which was also denied. This appeal followed.

■ We digress momentarily to comment on the waiver issue raised by the State. The general rule in Illinois is that affirmance of a conviction on appeal acts as *res judicata* for purposes of a subsequent post-conviction proceeding concerning all issues that were raised or that could have been raised in that appeal. (*People v. Barnard* (1984), 104 Ill. 2d 218, 228, 470 N.E.2d 1005, 1008; *People v. Roberts* (1979), 75 Ill. 2d 1, 11, 387 N.E.2d 331, 336.) In essence, such failure to raise an issue on direct appeal constitutes waiver of the issue where the relevant facts appeared in the record and thus could have been available on appeal. (*People v. Jones* (1985), 109 Ill. 2d 19, 23, 485 N.E.2d 363, 364; *People v. Stepheny* (1970), 46 Ill. 2d 153, 155, 263 N.E.2d 83, 85.) The State therefore contends that, because defendant failed to raise issues of ineffective assistance and denial of a constitutional right on direct appeal from his conviction, he is barred from doing so in his petition for post-conviction relief.

■ However, the waiver rule does not necessarily bar review of the issue presented if the interests of justice require it, and the rule will be modified where necessary to ensure fundamental fairness at trial. (*People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331; *People v. Davis* (1985), 130 Ill. App. 3d 864, 866-67, 474 N.E.2d 878, 879.) Certain allegations of incompetent assistance of counsel, including failure to introduce testimony which would have refuted that of a State witness, are not necessarily waived or barred by *res judicata* (see *People v. Hanrahan* (1985), 132 Ill. App. 3d 640, 478 N.E.2d 31), particularly when these matters did not appear in the record and thus could not have been raised on direct appeal. *People v. Stepheny* (1970), 46 Ill. 2d

153, 263 N.E.2d 83; *People v. Edmonds* (1979), 79 Ill. App. 3d 33, 398 N.E.2d 230.

■ Because the substance of the defendant's allegations concerning trial counsel incompetence do not appear in the original trial record, fundamental fairness obligated the trial court to hold a hearing on the post-conviction petition. A hearing was so held; the petition for relief was denied. To the contrary, in those cases relying on the waiver rule after affirmance of a conviction on direct appeal, the issue involved whether the trial court erred in dismissing the subsequent post-conviction petitions without any evidentiary hearing. (*People v. Roberts* (1979), 75 Ill. 2d 1, 387 N.E.2d 331; *People v. Stepheny* (1970), 46 Ill. 2d 153, 263 N.E.2d 83; *People v. Edmonds* (1979), 79 Ill. App. 3d 33, 398 N.E.2d 230; *People v. Summers* (1977), 50 Ill. App. 3d 33, 365 N.E.2d 241.) One further comment is necessary: we note that "[w]hen a defendant attacks competency of counsel for failing to call or contact certain witnesses, he must attach affidavits of these witnesses to his post-conviction petition and explain the significance of their testimony." (*People v. Carmickle* (1981), 97 Ill. App. 3d 917, 920, 424 N.E.2d 78, 80; see also *People v. Stepheny* (1970), 46 Ill. 2d 153, 263 N.E.2d 83; *People v. Hanrahan* (1985), 132 Ill. App. 3d 640, 478 N.E.2d 31.) Should a defendant fail to meet this requirement, he is normally not entitled to a hearing on his claim of incompetency. (*People v. Carmickle* (1981), 97 Ill. App. 3d 917, 424 N.E.2d 78.) Defendant herein attached no such affidavit of the witness in question to his petition. However, the fact remains that a hearing was held. Thus, our focus on appeal necessarily centers, as it would in other matters, on whether the trial court's findings after the hearing were manifestly against the weight of the evidence. (*People v. Bracey* (1972), 51 Ill. 2d 514, 517, 283 N.E.2d 685, 688.) Only then may the trial court's denial of the relief requested in the petition be reversed.

We now offer a brief synopsis of the facts surrounding this matter before entering our discussion of the merits. Testimony at the Moultrie County trial held in March of 1984 was elicited as follows: The State's first and primary witness, defendant's half-brother Wayne (Butch) Montgomery, testified that the defendant drove down from Springfield and met him at his father's cabin in Beardstown at about 8:30 or 9 the morning of September 9, 1983. The two men discussed a possible burglary in Arcola. Wayne's wife, Mary Lou, was present during part of that discussion. She later testified that she overheard their burglary plans, and that she observed the two men drive away in defendant's car. Wayne stated that he and the defendant later drove around, but abandoned their Arcola burglary plans because too

many people were present in the area. Instead, they eventually burglarized a home in Moultrie County and a home in Macon County. They then drove back to defendant's residence in Springfield, arriving there about 8:30 or 9 that evening. At this point, defendant made several telephone calls to two people, John Mardis and Orville Bartells, whom he and his half-brother thought might be able to "move" the merchandise. According to Wayne Montgomery, he and defendant drove to the home of Orville Bartells in Chandlerville, leaving around 10 p.m.

Wayne also testified that he pleaded guilty to this burglary as well as others, but he did not expect to gain any favoritism based on his testimony in the present case. On cross-examination, Wayne admitted that he had prior convictions for burglary and battery.

Defendant's brother, Dale Montgomery, and his girlfriend, Betty Simmons, both testified that they were at defendant's Springfield residence the evening of September 9, 1983, when they observed defendant and Wayne arrive at the house together. Dale and Betty stated they left defendant's home at about 9 p.m.

An exhibit was admitted into evidence containing a record of telephone calls made from the defendant's home the night of September 9. The itemized phone bill listed long-distance calls made to Mardis' home at 9:33 and 9:50 p.m., and a phone call to Bartells' residence at 9:43 p.m. The phone bill also showed numerous other calls made to these two people over a period of time; defendant stated they were his friends.

Defendant's wife, Carol Montgomery, testified for the defense. She stated that the events of September 9, 1983, stuck out in her mind because it was their son's birthday. She stated that she and defendant went to the Sears store in Springfield that afternoon to purchase a bicycle as a present for their son. She also testified that defendant was around the house most of the day working on a car. She further stated that a group of family and friends came to the house that evening for a birthday party. She denied that Dale Montgomery and Betty Simons had stopped by the evening of September 9, recalling that they came over the next night instead.

In all, some 12 witnesses testified on behalf of the defendant that they had observed him in and around Springfield September 9. Many also testified that they were present for the birthday party in the evening, but that Wayne Montgomery, Betty Simons, and Dale Montgomery were never at the defendant's home. Significantly, all of these witnesses were either relatives or close friends of the defendant's family.

At the conclusion of all the evidence, the jury found the defendant

guilty of residential burglary. This court affirmed his conviction on appeal.

During the Macon County trial in April of 1984, Barry Holtkamp, a Sears employee in the Springfield store, was called to testify. He stated that defendant and his wife had purchased a bicycle from him at about 1:15 or 1:30 the afternoon of September 9, 1983. Holtkamp testified that he remembered the defendant because it was the only bicycle sale he made that day. Holtkamp further recalled that defendant had joked about the bike being "junk," but because it was cheap, he would buy it anyway.

The hearing on the defendant's petition for post-conviction relief was held April 8, 1985. The transcript of Holtkamp's Macon County trial testimony was introduced before the court. Defendant's trial counsel, G. Ronald Kesinger, testified that defendant and his wife had given him a receipt for the Sears purchase on September 9 and requested he investigate this potential witness, but that he failed to do so. Kesinger stated this was merely due to "inadvertence" on his part, as he was busy interviewing other potential witnesses. Kesinger further stated:

"I was given just a receipt. I wasn't given a name so I didn't know who to interview until I found out who the witness was. But at that point, I simply didn't believe the defendant so I didn't think it happened."

Kesinger noted that the sales receipt had an employee code number on it, which defendant's wife and mother-in-law, on their own initiative, used to locate the witness.

The trial judge, after commenting that he had read the Moultrie trial transcript, the transcript of Holtkamp's testimony, and the appellate court order, denied the defendant's petition. The judge noted that Kesinger had produced 12 alibi witnesses on behalf of the defendant at trial, but indicated he believed the addition of one more witness probably would not have changed the result.

Defendant in this appeal urges that the additional testimony of Barry Holtkamp, had it been presented, would have changed the outcome of his trial in Moultrie County for essentially three reasons: (1) Holtkamp's testimony that defendant was in the store that afternoon directly contradicts that of the State's witness, Wayne Montgomery, who testified that he and defendant were together outside of Springfield from 9 a.m. until 9 p.m.; (2) Holtkamp's testimony was that of a disinterested witness, and thus would have carried more weight than that of the witnesses who actually testified for defendant, all of whom were close friends or relatives; and (3) defendant was found not guilty

of the Macon County burglary, committed within one hour of the Moultrie County offense, where the only real difference in the evidence presented during the two trials was Holtkamp's testimony. Defendant therefore maintains that counsel's failure to properly investigate his case and secure the favorable testimony of Barry Holtkamp constituted actual incompetence, and a new trial should be granted.

Turning now to the substantive issue of actual performance of counsel, an accused has the right to effective assistance of counsel in State criminal proceedings pursuant to the sixth and fourteenth amendments of the United States Constitution (U.S. Const., amends. VI, XIV; *People v. Knippenberg* (1977), 66 Ill. 2d 276, 362 N.E.2d 681), as well as under the Illinois Constitution of 1970 (Ill. Const. 1970, art. I, sec. 8). Counsel can, however, be so incompetent as to undermine that right and deprive defendant of his due process right to a fair trial. (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677.) Inadequacy of trial counsel entitles a defendant to a new trial if there is reasonable probability that: (1) defendant was denied effective assistance of counsel; and (2) but for counsel's unprofessional errors, the results would probably have been different. *Strickland v. Washington* (1984), 466 U.S. 668, 694, 80 L. Ed. 2d 674, 698, 104 S. Ct. 2052, 2068; *People v. Barnard* (1984), 104 Ill. 2d 218, 237-38, 470 N.E.2d 1005, 1012; *People v. Royse* (1983), 99 Ill. 2d 163, 457 N.E.2d 1217.

Effective assistance means competent, but not perfect and successful, representation. (*People v. Berland* (1978), 74 Ill. 2d 286, 385 N.E.2d 649, *cert. denied* (1979), 444 U.S. 833, 62 L. Ed. 2d 42, 100 S. Ct. 64.) The totality of circumstances must be considered in determining competency of counsel (*People v. Davis* (1981), 103 Ill. App. 3d 792, 431 N.E.2d 1210), and every effort must be made to eliminate the distorting effects of hindsight (*Strickland v. Washington* (1984), 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052). Errors in trial judgment, tactics, or strategy will not be reviewed by the courts in ascertaining possible incompetency. (*People v. Eddmonds* (1984), 101 Ill. 2d 44, 70, 461 N.E.2d 347, 360.) The burden is on the defendant to prove that counsel provided incompetent assistance. (*People v. Bracey* (1972), 51 Ill. 2d 514, 283 N.E.2d 685.) Finally, there no longer is any recognized difference in the standard applied to both appointed and privately retained counsel in determining competency. *Cuyler v. Sullivan* (1980), 446 U.S. 335, 344-45, 64 L. Ed. 2d 333, 344, 100 S. Ct. 1708, 1716; *People v. Scott* (1981), 94 Ill. App. 3d 159, 163-64, 418 N.E.2d 805, 808.

Of course, failure to interview witnesses may indicate actual

incompetence (*People v. Witherspoon* (1973), 55 Ill. 2d 18, 302 N.E.2d 3), particularly where witnesses are known to counsel and their testimony may be exonerating (*People v. Stepheny* (1970), 46 Ill. 2d 153, 263 N.E.2d 83). However, we do not find, in view of the totality of circumstances here, that the performance of defendant's trial counsel was incompetent. Attorney Kesinger interviewed several potential witnesses in preparing the defense of his client, and 12 alibi witnesses were in fact produced at trial. Kesinger cross-examined the State's witnesses and ably questioned each of his own. Although Kesinger failed to follow up on the sales receipt, he did investigate and present the testimony of numerous other witnesses on the defendant's behalf. While hindsight indicates Kesinger should have checked out the circumstances surrounding the bicycle purchase, we are not convinced that such inaction requires a finding of incompetence and a new trial.

Granted, Holtkamp's testimony as a disinterested witness may have lent more credibility to the defendant's story as well as carried more weight with the jury. All other witnesses that testified for the defendant were either family or close friends. Also, Holtkamp's testimony would have refuted that of Butch Montgomery by placing the defendant in a Springfield department store during the same time frame that Butch and the defendant were allegedly together. Yet, many other witnesses also stated the defendant was in Springfield that day, and that Butch was not at the house in the evening. Apparently, the jury did not believe them. Mindful of the admonition that attorney performance should not be distorted by the benefit of hindsight, we fail to see how the addition of one more witness would, as a reasonable probability, have changed the outcome of the trial.

■ Nor do we believe that the mere fact the defendant was found not guilty of the Macon County burglary, allegedly occurring on the same day and under similar circumstances, should sway our decision here. Any number of trial factors may have differed beyond the addition of Holtkamp's testimony, including the attitudes of the jurors and the relative credibility of the witnesses. Indeed, all trials are *sui generis*—no two may be presented in exactly the same manner. (*People v. Gharst* (1984), 122 Ill. App. 3d 1, 5, 460 N.E.2d 813, 816.) The methods of presenting evidence and the trial techniques employed could have differed; we are considering two different trials in two different counties with two different prosecuting offices. The testimony itself could have been disparate in each case.

■ Finally, defendant cites *People v. Corder* (1982), 103 Ill. App. 3d 434, 431 N.E.2d 701, as factually similar to the instant matter. In *Corder*, the defendant was convicted on the strength of an identifica-

tion by an undercover police officer. This officer testified that the criminal he observed was virtually clean-shaven at the time of the offense. The crux of defendant's argument at trial was that he had continually worn a beard over the last six years. However, his testimony in this regard went completely uncorroborated. Defense counsel failed to introduce a driver's license, issued to defendant six days before the crime, that showed defendant with a full beard, even though counsel was at all times aware of this evidence. Further, counsel failed to contact several potential witnesses who would have testified that defendant wore a beard during the relevant time period. Under the circumstances, the court in *Corder* found that counsel was actually incompetent, resulting in substantial prejudice to the defendant without which the outcome of his trial probably would have been different, and reversed for a new trial. 103 Ill. App. 3d 434, 438, 431 N.E.2d 701, 704.

*Corder*, however, is distinguishable. Defense counsel in *Corder* was given a list of potential witnesses who would testify that defendant wore a beard; counsel failed to interview any of them, unlike the situation in the present case. Also, defense counsel in *Corder* apparently was aware of the other testimony and evidence, including the driver's license, before, during, and after trial, but failed to utilize it. Trial counsel's performance here, on the other hand, was more substantial.

We appreciate the candor of counsel in pursuing this matter and giving his opinion as to his own incompetence. However, we hold that counsel's performance was not inadequate, and that the outcome of the trial would not have been different had the additional witness testified. Accordingly, we affirm the order of the circuit court of Moultrie County denying defendant's petition for post-conviction relief.

Affirmed.

WEBBER and SPITZ, JJ., concur.